UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DERRICK SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:18-CV-01924 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| OFFICER ZETTERGREN, | ) | |
| OFFICER LIEBERMANN, and | ) | |
| CITY OF JOLIET, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Derrick Smith brings this excessive-force suit against the City of Joliet and two of its police officers, Eric Zettergren and Kent Liebermann. Smith alleges that, on the night of September 27, 2016 (the date turns out to be important), Zettergren and Liebermann violated the Fourth Amendment by using excessive force when detaining and arresting Smith.[1] After the stop and arrest, Smith had a gash on the back of his head. Smith submitted his original complaint in March 2018, within the two-year statute of limitations—but naming only Zettergren as a defendant. R. 1.[2] In August 2019, Smith filed an Amended Complaint adding Liebermann as a defendant. R. 49. The Amended Complaint was timely filed, Smith argues, because it relates back to the original complaint's filing date under Federal Rule of Civil Procedure 15(c)(1)(C).

---

[1]This Court has jurisdiction over Smith's 42 U.S.C. § 1983 claims under 28 U.S.C. § 1331.

[2]Citations to the record are noted as R. __, followed by the docket number, with a page or paragraph number if applicable.

The defense has now moved for summary judgment on behalf of Liebermann, arguing that the claims against him are time-barred. R. 96. As this Opinion will explain, there are still key facts in dispute. The disputed facts bear directly on whether the Amended Complaint is entitled to relation back under Civil Rule 15(c). Viewing the facts in the light most favorable to Smith, he has raised a genuine dispute of fact on whether Liebermann received notice of the original complaint within the necessary time frame and whether Liebermann knew (or should have known) that he would have been named in the original complaint, but for a mistake. At this stage, Smith has created a dispute of material fact that precludes summary judgment. An evidentiary hearing must be convened.

## I. Background

In deciding Officer Liebermann's summary judgment motion, the Court views the evidence in the light most favorable to the non-moving party—in this case, Derrick Smith. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

On the night of September 27, 2016, Derrick Smith passed an unmarked police car while walking in the street to smoke a cigarette. R. 101, Pl. Resp. DSOF ¶ 6–7.[3] When passing the car, Smith heard someone yell, "Bring your ass here." *Id*. ¶ 8. Smith ran and was chased by the officers who had been sitting inside the unmarked car.

---

[3]Citations to the parties' Local Rule 56.1 Statements of Fact are identified as follows:"DSOF" for the Defendants' Statement of Fact (R. 98); "Pl. Resp. DSOF" for Plaintiff's responses to the Defendants' Statement of Fact and "PSOAF" for Plaintiff's Statement of Additional Fact. Both Pl. Resp. DSOF *and* PSOAF were filed as a single document at R. 101. The Plaintiff's Statement of Additional Fact begins on page 7 of R. 101.

2

Dfs.' Br. at 2. The officers yelled that they were police and Smith got on his knees and put his hands in the air. Pl. Resp. DSOF. ¶ 11. Officers handcuffed and arrested Smith. *Id*. After Smith got on his knees and put his hands up, one of the officers hit Smith in the head with a blunt object. DSOF ¶ 12. Smith sustained a laceration on the back of his head, as well as a closed head injury. Pl. Resp. DSOF ¶ 15. Smith now brings this lawsuit under 42 U.S.C. § 1983 for use of excessive force in violation of the Fourth Amendment.

After various fits and starts in the litigation, Smith survived screening review and his initial complaint (which was filed *pro se*) was filed on October 29, 2018. R. 15, Original Compl. But he named as defendants only Officer Zettergren and the Joliet Police Department. Original Compl. at 1. Eventually, the Court recruited counsel for Smith in May 2019. R. 35; R. 39. Naturally, the parties disagree about what really happened between Smith and the police on the night in question. For the purposes of this Opinion, however, only a few specific allegations are important. Smith's original complaint alleged that Officer Zettergren tackled him and hit him in the head with a blunt object. Original Compl. at 2. Smith based his complaint on "Officer Zettergren['s] action of hitting the Plaintiff in the head …." *Id*. at 3.

Smith, along with his newly recruited counsel, exchanged mandatory initial discovery with the defense. PSOAF ¶ 10. While reviewing the initial discovery, Smith realized that he had made an error. Officer *Liebermann*, not Officer Zettergren, was the officer who tackled Smith and also likely the person who hit him in the head with an object. *Id*. It was Liebermann whose "action of hitting Plaintiff in the head"

3

prompted this lawsuit, not Zettergren. Smith and his counsel realized that he had mistakenly sued Zettergren instead of Liebermann. R. 100, Plaintiff's Brief (Pl.'s Br.) at 3. Smith filed an Amended Complaint on August 21, 2019, adding Officer Liebermann as a defendant. R. 49, Amended Complaint (Am. Compl.).

In asking for summary judgment, the defense says that Smith added Liebermann outside the statute of limitations. R. 96, Defendants' Motion for Summary Judgment (Defs.' Mot. Summ. J.) Smith responds that the addition of Liebermann relates back to the timely filed complaint, so under Civil Rule 15(c), the Amended Complaint is timely and summary judgment should be denied. Pl.'s Br.

## II. Standard of Review

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The Court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are

entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

### III. Analysis

### A. Relation Back

Smith argues that the Amended Complaint adding Officer Liebermann is timely under the relation-back doctrine codified at Fed. R. Civ. P. 15(c)(1)(C). Pl's. Br. The relation-back doctrine refers to a rule that gives, under certain circumstances, a later-filed complaint the benefit of an earlier-filing date if there was a "mistake" as to the proper defendant's identity in the original complaint:

> (1) An amendment to a pleading relates back to the date of the original pleading when:
>
>> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>>
>>> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>>>
>>> (ii) knew or should have known that the action would have been brought against it, but for a *mistake* concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1)(C) (emphasis added). As the text of the rule reflects, a plaintiff seeking to take advantage of relation back first must satisfy another subparagraph, specifically, Rule 15(c)(1)(B). That rule requires that the later-filed complaint assert

5

conduct that arises out of the same "conduct, transaction, or occurrence set out" in the initial complaint. Fed. R. Civ. 15(c)(1)(B). Here, no one disputes that the Amended Complaint does just that: the claims in it arise out of the same alleged arrest and excessive force set out in the original complaint.

But the defense argues that three other necessary conditions of the relation-back doctrine are not satisfied here. To start, the defense contends that Liebermann did not receive notice within the Rule 4(m) time period, so Rule 15(c)(1)(C)(i) cannot be satisfied. Defs.' Br. at 7–9. Next, the defense argues that Liebermann did not know, nor should he have known, that he would have been named in the lawsuit but for a mistake (that is the condition in Rule 15(c)(1)(C)(ii)). *Id.* at 9–10. And finally, Liebermann asserts that even if he had actual notice and knew or reasonably should have known that Smith meant to sue him, Smith's failure to name Liebermann in the original complaint is not a "mistake" as it is understood under Rule 15(c). *Id.* at 11–12. The Court addresses each argument in turn.

### 1. Actual and Timely Notice

No one disputes that the applicable Rule 4(m) time frame in this case is October 29, 2018 (the date the original complaint was allowed to be filed), through January 28, 2019 (90 days after the complaint's filing). So, for the purposes of this motion, the question is: is there a genuine factual dispute on whether Liebermann had actual notice of the lawsuit before January 28, 2019? The answer is yes.[4]

---

[4]In certain circumstances, it is possible for constructive notice to satisfy Rule 15(c)(1)(C)(i). *See, e.g.*, *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 554 (2010). But constructive notice does not apply here; the only conceivable argument is that Liebermann has the same lawyers as Zettergren, but that did not happen until after the Rule 4(m) period.

For the purposes of Rule 15(c), actual notice does not have to be formal. Fed. R. Civ. P. 15. There is no doubt in this case that Liebermann and Zettergren spoke about the lawsuit—at some point. PSOAF ¶¶ 25–28. Similarly, there is no doubt that, at some point, Liebermann knew that Smith had only sued Zettergren in the original complaint. *Id.* The key question is *when*, and it is an important question. "Whether a fact is material depends on the substantive law underlying a particular claim and only disputes over facts that *might affect the outcome* of the suit under governing law will properly preclude the entry of summary judgment." *Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir. 1988) (cleaned up) (emphasis in original).[5] The timing of Liebermann and Zettergren's conversations about Smith's lawsuit is crucial because if (as the defense argues) Liebermann and Zettergren did not discuss Smith's lawsuit until after January 28, 2019, then Liebermann's notice of the lawsuit came after the expiration of the Civil Rule 4(m) period.

The defense asserts that Liebermann first learned about Smith's lawsuit when Zettergren told him about it—sometime *after* the Rule 4(m) date of January 28, 2019. It is true that Liebermann eventually said that he learned of the suit after February 2019, but he *initially* said that he "couldn't say" when that happened. Pl. Resp. DSOF ¶ 34. According to the defense, Liebermann's own statement that it was after February 2019 puts the question beyond dispute. Defs.' Br. at 7. Liebermann cites *Walter* for the proposition that a "motion for summary judgment cannot be defeated merely

---

[5] This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

7

by an opposing party's incantation of lack of credibility over a movant's supporting affidavit." 840 F.2d at 434. That is generally right. But Smith offers key facts well beyond a mere incantation of lack of credibility.

First, a reasonable factfinder could reject Liebermann's proffer of post-February 2019 as when he learned about the lawsuit because at first Liebermann testified, in his deposition, that he "couldn't say" when that happened. Pl. Resp. DSOF ¶ 34. Sure, Liebermann can try to explain that damning answer by arguing that he was able to better pinpoint the time frame with reference points. But at the summary judgment stage, the Court must view the evidence in Smith's favor and give Smith the benefit of reasonable inferences. Unfortunately for Liebermann, he testified that he couldn't say when he learned of the lawsuit, and he is stuck with that problem on a summary judgment evaluation.

Second, as Smith highlights, Zettergren and Liebermann were partners patrolling in the same squad car from around 2015 or 2016 to January or February 2019. Pl. Resp. DSOF. ¶ 32. Their shifts together were often 10 hours at a time. PSOAF ¶¶ 18–19. The officers socialized outside of work and attended one another's weddings. PSOAF ¶ 19. At the latest, Zettergren became aware of this lawsuit in December 2018. Pl. Resp. DSOF ¶ 28. So when Zettergren found out about the lawsuit, his work assignment put him and Liebermann together as partners patrolling in the very *same* car for 10-hour shifts. PSOAF ¶¶ 18–19. That close relationship is solid circumstantial evidence that Zettergren would have told Liebermann that Zettergren had been sued (or, in the words of Rule 15(c)(1)(C)(i), "notice of the action"). As noted

8

earlier, the Court cannot weigh conflicting evidence or make credibility determinations at this stage. *Omnicare, Inc.*, 629 F.3d at 704. Together, the facts discussed here create a genuine issue of material fact. A reasonable factfinder could conclude that Zettergren and Liebermann actually discussed Smith's lawsuit before the Rule 4(m) deadline expired.

## 2. Knew or Should Have Known

The next question is whether Liebermann knew, or at least should have known, that Smith would have sued Liebermann, but for a mistake on the right party's identity. Fed. R. Civ. P. 15(c)(1)(C)(ii). Rule 15(c)(1)(C) prevents a "windfall for a prospective defendant who understood, or should have understood, that he escaped suit during the limitations period only because the plaintiff misunderstood a crucial fact about his identity." *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 550 (2010). On this specific knew-or-should-have-known element, "Rule 15(c)(1)(C)(ii) asks what the prospective *defendant* knew or should have known during the Rule 4(m) period, not what the plaintiff knew or should have known at the time of filing her original complaint." *Id.* at 548 (emphasis in original). So in this case, the next crucial question is whether Liebermann knew or reasonably should have known that Smith meant to sue him (but for a mistake, an issue discussed in the next section).

The defense argues that, based on the original complaint and record, Liebermann could not have reasonably known that Smith would have brought the case against him instead of Zettergren, but for a mistake. Defs.' Br. at 9. Liebermann relies on the same timing argument that he presented earlier on notice: if Liebermann did

9

not even know about the lawsuit until after the Rule 4(m) period, how could he have possibly known that he was actually the intended defendant of the lawsuit? *Id.* at 7–9. But there is a genuine factual dispute on that issue, so that argument is not a silver bullet in Liebermann's favor.

Liebermann next argues that, even if he knew about the lawsuit within the relevant time period, it would not have been reasonable for him to believe that he was supposed to be the defendant (or be another defendant in addition to Zettergren). Defs.' Br. at 9. To support this point, Liebermann argues that the original complaint made no attempt to include him—there was no mention of "unknown officers" or a non-existent, misidentified "Officer Liverman." *Id.* To Liebermann's way of thinking, this means that he reasonably thought that Smith had made a deliberate choice to only sue Zettergren.

But that argument misses the point made by the Supreme Court in *Krupski*: if the plaintiff "misunderstood crucial facts," then that obviously undermines the conclusion that the plaintiff made a deliberate choice to sue one party and not the other. 560 U.S. at 555. Just as in *Krupski*, where "the face of the complaint plainly indicated such a misunderstanding," *id.*, so too here. The original complaint clearly shows that Smith intended to sue the officer who tackled him and hit him in the head—which he thought was Zettergren. The complaint explicitly alleged that Smith had been "knocked out by officer zettergren." R. 15, Original Complaint at 2. It explicitly alleged that "Officer Zettergren['s] action of hitting the Plaintiff in the head" was excessive. *Id.* at 3. He did not include a Doe Defendant or an "Officer Liverman" because

10

why would he? The complaint plainly shows that Smith believed that he knew the name of the officer that struck him.

Drawing inferences in Smith's favor, from the night of the incident through the lawsuit's filing and beyond, Liebermann knew that he was the one who had chased, tackled, and hit Smith in the head—not Zettergren. By both officers' own admissions, the incident was a "unique situation." PSOAF ¶ 20. Liebermann has already conceded that he was surprised by the fact that only Zettergren was named in the original complaint. PSOAF ¶¶ 28. In the context of the lawsuit, Liebermann—and Zettergren—both discussed and expressed surprise that Smith had not sued Liebermann. *Id*. ¶¶ 26–28. And, just as the Supreme Court pointed out in *Krupski* as to the defendant in that case, why would Smith *not* sue Liebermann, but for a mistake? *Krupski*, 560 U.S. at 555 ("Moreover, respondent has articulated no strategy that it could reasonably have thought Krupski was pursuing in suing a defendant that was legally unable to provide relief"). So there is plentiful circumstantial evidence from which to infer that Liebermann knew or should have known that he was the intended target of the lawsuit after reading the complaint or, at the least, becoming aware of its contents through speaking with his partner Zettergren.

### 3. Mistake

The final condition at issue is whether Smith made a "mistake." Remember that the pertinent requirement is that the new defendant (that's Liebermann here) "knew or should have known that the action would have been brought against it, but for a *mistake* concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C)(ii)

(emphasis added). The defense contends that Smith's failure to include Liebermann in the original complaint was not a "mistake" under this rule.

Smith invokes the Supreme Court's decision in *Krupski* to argue that he made a "classic mistake for Rule 15 relation back purposes." Pl.'s Br. at 12; *Krupski*, 560 U.S. at 541, 549. In *Krupski*, a passenger tripped over a cable and fractured her leg while on board a cruise ship owned and operated by Costa Crociere S.p.A. *Krupski*, 560 U.S. at 541–42. The passenger filed a lawsuit, but initially named "Costa Cruise Lines" as the defendant. *Id.* at 543. Costa Cruise Lines, however, was merely the North American sales and marketing agent for Costa Crociere, which was an Italian corporation. *Id.* By the time that the passenger sued and served Costa Crociere as the proper defendant in an amended complaint, the statute of limitations had expired. *Id.* at 544–45. The district court dismissed the amended complaint as untimely, and the court of appeals affirmed. *Id.* at 546. The appellate court reasoned that the passenger either knew or should have known the identity of the correct defendant, so the court deemed the passenger to have *deliberately* chosen to sue Costa Cruises Lines. *Id.* at 548. Thus, no "mistake" had been committed as required by Rule 15(c)(1)(C)(ii).

The Supreme Court reversed and held that the amended complaint could relate back to the filing date of the original complaint. *Id.* at 557. Based on the text of the Rule, the relevant question was not what the *plaintiff* knew or should have known about the proper defendant's identity—the question is what the *defendant* knew or should have known. *Id.* at 548. "Rule 15(c)(1)(C)(ii) asks what the prospective *defendant* knew or should have known during the Rule 4(m) period, not what the *plaintiff*

12

knew or should have known at the time of filing her original complaint." *Id.* (emphases in original). Having said that, the Supreme Court did acknowledge that what the *plaintiff* knew is relevant "if it bears on the defendant's understanding of whether the plaintiff made a mistake regarding the proper party's identity." *Id.* But just because the passenger knew of both Costa entities before filing the lawsuit did not necessarily mean that she did not make a "mistake" in initially suing Costa Cruise Lines. *Id.* at 548–49. She still misunderstood the roles that each entity played in the accident, and that qualified as a "mistake." *Id.* at 549. So relation back could apply even if the plaintiff knew about both Costa entities before filing the lawsuit. *Id.*

Whether Smith made a "mistake" within the meaning of Civil Rule 15(c)(1)(C)(ii) is a question of law. And in this case, it is a straightforward one. *Krupski*'s holding is directly applicable. Smith sued the wrong officer. He thought he was suing the officer who hit him in the head. He made a mistake about the proper party's identity. Just like the plaintiff in *Krupski* misunderstood the role of Costa Cruise Lines, so too did Smith misunderstand the role of Zettergren and Liebermann.

Against this, Liebermann tries to connect this case with the case law on Doe Defendants, *Herrera v. Cleveland*, 8 F.4th 493, 496–97 (7th Cir. 2021), but this is not a Doe Defendant case. It is true that suing a Doe Defendant is not a "mistake" under Rule 15(c); if anything, it is accurate to sue a Doe Defendant, because the plaintiff does not know the person's name. *Id.* at 498. But Smith did not sue an unknown Doe Defendant and then try to substitute Liebermann as the Doe Defendant outside the

13

limitations period. No, Smith *mistakenly* sued Zettergren has the assailant. *Herrera* does not address this case.

Moving beyond Doe Defendants, Liebermann relies on a pre-*Krupski* case, *Hall v. Norfolk S. Ry. Co.*, for the proposition that "relation back on grounds of mistake concerning the identity of the proper party does not apply where the plaintiff simply lacks knowledge of the proper defendant." 469 F.3d 590, 596 (7th Cir. 2006), (cleaned up). But that is all but impossible to square with *Krupski*, as the Seventh Circuit itself said in *Herrera*: "it is difficult to reconcile the result in *Hall* … with *Krupski* …. " 8 F.4th at 498.

The dictionary definition of "mistake" cited in *Krupski* shows why Liebermann's arguments on this point are incorrect. The decisions highlight that, first and foremost, a mistake is something that is *wrong*: an "error, misconception, or misunderstanding," or put another way, "a wrong action or statement," *Krupski*, 560 U.S. at 548 (cleaned up). Smith thought Zettergren was the officer who tackled him and hit him in the head. He was wrong—it was Liebermann. At the risk of sounding redundant, Smith made a mistake. He misunderstood Zettergren's role. The bottom line is that the plain and ordinary meaning of the word "mistake" precisely describes what Smith did.

With the genuine and material factual disputes at issue, summary judgment must be denied.

## B. Equitable Tolling

Lastly, Smith argues that, even if relation back does not apply under Rule 15(c), the Court should apply equitable tolling and consider the complaint as timely (or at least there must be a hearing on the issue). Pl.'s Br. at 14. The defense responds that Smith did not exercise due diligence to obtain the vital information for his claim, so equitable tolling does not apply. R. 102, Defs.' Reply at 1–4. The defense is correct.

The doctrine of equitable tolling "creates a defense to statute of limitations and other nonjurisdictional filing deadlines for cases in which, despite due diligence, the plaintiff cannot sue within the statutory deadline." *Sparre v. United States Dep't of Labor, Admin. Review Bd.*, 924 F.3d 398, 402 (7th Cir. 2019) (cleaned up). Equitable tolling applies only if (1) the plaintiff has diligently pursued the plaintiff's rights; and (2) some extraordinary circumstance nevertheless prevented timely filing. *Mayberry v. Dittmann*, 904 F.3d 525, 529 (7th Cir. 2018). To satisfy the second requirement, the circumstances causing the litigant's delay must be "both extraordinary *and* beyond its control." *Id.* (emphasis in original) (quoting *Menominee Indian Tribe of Wis. v. United States*, 136 S. Ct. 750, 756 (2016)). "[F]ailure to show either element will disqualify him from eligibility for tolling." *Id.* at 530.

Equitable tolling is an "extraordinary remedy that is rarely granted." *Carpenter v. Douma*, 840 F.3d 867, 870 (7th Cir. 2016) (cleaned up); *see also* Obriecht v. Foster, 727 F.3d 744, 748 (7th Cir. 2013) (quoting *Simms v. Acevedo*, 595 F.3d 774, 781 (7th Cir.2010)); *Wallace v. Kato*, 549 U.S. 384, 396 (2007) ("Equitable tolling is a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely

15

common state of affairs"); *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990) ("Federal courts have typically extended equitable [tolling] relief only sparingly"). But by the same token, the bar is not set so high as to make equitable tolling impossible. *See Socha v. Boughton*, 763 F.3d 674, 684 (7th Cir. 2014). Instead, its applicability is highly dependent on the facts and "courts are expected to employ flexible standards on a case-by-case basis." *Id.* (cleaned up)*; see also Holland v. Florida*, 560 U.S. 631, 650–52 (2010).

Likewise, Illinois law requires that a person invoking the tolling doctrine demonstrate that he has pursued his rights diligently. *Bryant v. City of Chicago*, 746 F.3d 239, 243 (7th Cir. 2014) ("If despite the exercise of reasonable diligence the plaintiff cannot discover his injurer's (or injurers') identity within the statutory period, he can appeal to the doctrine of equitable tolling to postpone the deadline for suing until he can obtain the necessary information") (cleaned up); *see also Shropshear v. Corporation Counsel of City of Chicago*, 275 F.3d 593, 595 (7th Cir. 2001) ("Equitable tolling permits a plaintiff to avoid the bar of the statute of limitations if despite the exercise of all due diligence he is unable to obtain vital information bearing on the existence of his claim"). The due diligence requirement applies in an ongoing way, throughout the length of the delay. *Singletary v. Ill. Nat. Bank & Tr. Co. of Chicago*, 9 F.3d 1236, 1243 (7th Cir. 1993).

Here, equitable tolling does not apply, and there is no genuine question about it. Smith did not show reasonable diligence in tracking down necessary information for his case. To supposedly show his due diligence, Smith points to the following facts:

he has been in custody since September 27, 2016; he only briefly got to look at the records in this case while handcuffed at his criminal hearing; and he began this case *pro se*. Pl.'s Br. at 14–15. Smith also makes the conclusory assertion that he applied his "best efforts and due diligence." *Id*. at 15. It is true that detention makes tracking down important documents to a lawsuit more difficult. But that is not the standard for equitable tolling. For example, an incarcerated and *pro se* plaintiff can show reasonable diligence by, for example, filing a motion to uncover information about the claim. *See Bryant*, 746 F.3d at 243. Smith did not do that, nor did he take the even more basic step of filing an Illinois Freedom of Information Act request to obtain records, such as the police arrest report. Indeed, Smith had a criminal defense lawyer in the prosecution, and the criminal discovery process in itself could have produced documents for Smith. When asked about that route during his deposition, he invoked attorney-client privilege. R. 98-1, Defs.' Exh. 1, Smith Dep. at 49:11–20. Invoking privilege there just means that Smith has failed to meet his burden to offer evidence on due diligence. Even viewing the concrete facts in Smith's favor, Smith does not come close to a showing of extraordinary circumstances justifying the application of equitable tolling. That argument is rejected.

### IV. Conclusion

Liebermann's motion for summary judgment on Liebermann's behalf is denied. It appears that, as an application of a Federal Rule of Civil Procedure, it is for the Court to decide the underlying facts. In *Krupski*, for example, it was the district court that decided the facts, 560 U.S. at 545, not a jury, and the Supreme Court made no

17

mention of jury-trial right on Rule 15(c) relation back. Out of an extreme abundance of caution, the parties shall jointly file a Position Paper stating their respective positions on (a) whether they agree to a bench hearing no matter if there is a jury-trial right; or (b) instead one party or the other (or both) want a jury trial on it (or to submit it to the jury combined with a merits trial). If either side (or both) seeks a jury, then the requesting party must explain in detail why there is such a right. In the Position Paper, the parties shall also set forth a witness list and expected duration of the hearing. The Court then will convene a status hearing to schedule the hearing and set other deadlines (such as an exhibit-list deadline) and discuss other logistics. Finally, the parties shall commence settlement negotiations again in light of this decision, and shall report on those negotiations in the Position Paper. The filing is due on October 21, 2021.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: September 30, 2021